The appellant, Paul Earl Black, was convicted of robbery in the first degree and assault in the first degree. Pursuant to Alabama's Habitual Felony Offender Act, he was sentenced to life imprisonment and to life imprisonment without parole, the two sentences to be served concurrently. He raises five issues on this appeal.
In the early morning hours of January 16, 1992, Joey McKinney, an employee of a Texaco gasoline station in Dothan, Alabama, was ringing up the sale of two Sunkist sodas, two bags of potato chips, and a pack of cigarettes, for two men. He looked up from making change and saw that the taller of two men was holding a nickel- or chrome-plated semi-automatic pistol. McKinney handed money from the cash register to the taller man. The shorter man jumped up onto the counter and lunged at McKinney. The two men then walked out the door. The shorter man ran around the corner of the building. The taller man took about two steps out the door then went back inside and shot McKinney. McKinney, who suffered a serious wound to his arm, testified that the person depicted in State's Exhibit Number 22, which was a photograph of the appellant, resembled the smaller of the two men.
A paramedic for the City of Dothan provided emergency care to McKinney at the crime scene. An investigator for the Dothan Police Department recovered the bullet and the spent casing. He also recovered the potato chip bags and soft drinks, which had been left behind by the two men, and he submitted this evidence for fingerprint analysis.
A certified examiner of latent prints was able to identify prints from one bottle as being from the left index finger of Corey Clark. She identified a print from the appellant's left thumb and a print from his left index finger taken from one of the potato chip bags, by comparing these latent prints with his known prints obtained from Alabama's Automated Fingerprint Identification System.
An acquaintance of Clark's turned over to the police a pistol, which was tested and determined to be the one used to shoot McKinney. The police apprehended the appellant; when they found him he was under a bed in his sister's apartment. Also found in the apartment were a box of the same type of bullets as those used in the pistol during the robbery and a black hooded sweatshirt similar to the ones described by McKinney as being worn by each of the robbers.
 I
The appellant argues that the State failed to prove a prima facie case of robbery in the first degree or assault in the first degree, or any lesser included offenses. *Page 944 
In determining the sufficiency of evidence to sustain a conviction, we must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485
(Ala.Crim.App. 1984), aff'd. 471 So.2d 493 (Ala. 1985); Underwood v. State,646 So.2d 692 (Ala.Crim.App. 1993). Although the victim in this case failed to make a positive identification of the appellant, he did describe one of the robbers in terms that fit the defendant. The recovery of the sweatshirt and ammunition further supports the State's case against the defendant. The matching fingerprints, taken with the other evidence presented, provided sufficient evidence to properly present the case to the jury.
 II
Next, appellant argues that the jury's verdict was contrary to the weight of the evidence.
The weight of the evidence, the credibility of the witnesses, and the inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. Willcutt v. State, 284 Ala. 547, 226 So.2d 328, 330
(1969); Deutcsh v. State, 610 So.2d 1212, 1234
(Ala.Crim.App. 1992). This court may not reweigh the evidence presented to the jury; it may not substitute its judgment for that of the jury, except in those extreme cases when it determines that the verdict of the jury is wrong and unjust. Deutcsh, supra at 1234. We find no such deficiencies in this case.
 III
The appellant contends that his indictment was unconstitutional because, he says, the grand jury that indicted him was constitutionally infirm in that historically blacks have been excluded as forepersons of the grand jury in the Houston County Circuit Court.
The appellant first raised this issue in his motion for a new trial and argues that because the State failed to object to the motion as untimely and because the trial judge ruled on the merits of his motion, this issue was preserved for review by this court. Our search of the record does not reveal that the trial judge in this case ruled on the merits as to this particular issue. In fact, the trial judge's ruling on the appellant's motion for a new trial was entered simply as follows: "Upon hearing, Motion for New Trial is denied." The appellant had raised seven issues in his motion.
Rule 15.2 Ala.R.Crim.P., provides that "objections based on defects in the commencement of the proceeding or in the charge . . . may be raised only by pre-trial motion as provided in Rule 15.3." This rule requires a defendant to raise an issue such as this one before arraignment or by such time as set by the trial court.
The facts of this case are distinguishable from those in the case cited by the appellant. In Rutherford v. State,612 So.2d 1277 (Ala.Crim.App. 1992), we held that there would be no procedural bar to a review of this issue where the trial court ruled on the merits of the defendant's motion to dismiss the indictment. Those circumstances do not exist in the case before us. The appellant did not timely object to the alleged misrepresentation of blacks on the grand jury and the trial judge did not rule on the merits of that objection. Thus, the appellant is barred from raising this issue on appeal.
 IV
The appellant next argues that the trial court erred by overruling his objection to the prosecutor's waving bloody clothes before the jury, given that those clothes had been previously identified by the victim. The appellant contends that the prosecutor's actions were inflammatory and more prejudicial than probative.
A bloody shirt and sweater were identified by the victim as those he was wearing when he was shot. Those items were admitted into evidence without objection. A subsequent State's witness was the paramedic who had provided emergency treatment to the victim. The prosecutor asked the paramedic about the shirt and the sweater: *Page 945 
 "Q. Let me show you what has been identified as being the clothing he was wearing on that occasion, a dark shirt . . ."
"A. Yes, sir."
"Q . . . and a sweater (indicating)"
"A. Yes, sir."
 "Q. Defense Counsel: Judge, I object . . . to them being waved in front of the jury." R. 76.
A trial court may exclude relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Graves v. State, 632 So.2d 30, 31
(Ala.Crim.App. 1992), reversed in part on other grounds. However whether to exclude evidence on this basis is largely within the discretion of the trial court, and the trial court's determination in that regard will not be disturbed absent a clear showing of abuse. Spellman v. State, 473 So.2d 618
(Ala.Crim.App. 1985). Our review of the record fails to uncover any abuse by the trial court in overruling the appellant's objection to the second presentation of the articles of clothing before the jury.
 V
Last, the appellant raises an ineffective assistance of counsel argument. His specific complaint regarding his defense counsel was counsel's failure to object to the description of the Alabama Automated Fingerprint Identification System (AFIS) given by the State's witness on direct examination. The witness explained that the AFIS computer searches its data base of all "active criminals that are booked into the State of Alabama over the past year and a half' for a possible match with latent prints lifted from a crime scene. The appellant contends that defense counsel exacerbated the alleged prejudicial harm by pursuing a line of questioning that produced similar answers on cross-examination.
In order to prove that trial counsel was ineffective a defendant must show: (1) that counsel's performance was deficient, and (2) that that deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Wesson v. State, 644 So.2d 1302,1313 (Ala.Crim.App. 1994). We are not required to address both requirements if the appellant makes an insufficient showing in regard to one of them. Wesson supra.
The prosecutor asked the witness "to tell the ladies and gentlemen of the jury what AFIS is," The answer was an explanation that included a comment on the data base. The explanation of AFIS was relevant, informative, and without prejudice. The comment that the data base contained records of all "active criminals" was not helpful to the defense, but it was not so prejudicial that an objection would have probably produced a different outcome. Every missed opportunity for an objection does not constitute ineffective assistance. On occasion, in fact, circumstances suggest silence on the part of counsel. The prejudice requirement of the Strickland test requires a showing that a different outcome of the trial probably would have resulted but for counsel's allegedly ineffective performance. Ex parte Lawley, 512 So.2d 1370, 1372
(Ala. 1987). The appellant has not made such a showing and thus is not entitled to prevail on his claim of ineffective assistance of counsel.
For the reasons stated above, the judgment of the circuit court is due to be affirmed.
The foregoing opinion was prepared by the Honorable JOHN W. DAVIS, Circuit Judge, temporarily on duty on this court pursuant to § 12-2-30(b)(6), Code of Alabama 1975. This court has adopted this opinion as its own.
AFFIRMED.
All the Judges concur. *Page 946